UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WESLEY BRYANT, JR. AND PATRICIA BRYANT, § § § *Plaintiffs*, § § v. § § U.S. BANK TRUST, N.A. AS TRUSTEE FOR § LSF8 MASTER PARTICIPATION TRUST BY § CALIBER HOME LOANS, INC., ATTORNEY IN § FACT, § § *Defendant*. § | CIVIL ACTION H-19-2075 |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are defendant U.S. Bank Trust, N.A. as trustee for LSF8 Master Participation Trust by Caliber Home Loans, Inc., attorney in fact's ("U.S. Bank") motion for summary judgment (Dkt. 17) and motion to strike (Dkt. 24). Plaintiffs Wesley Bryant, Jr. and Patricia Bryant ("the Bryants") have responded to the motion for summary judgment (Dkt. 21) but not to the motion to strike. After reviewing the motions, response, and applicable law, the court is of the opinion that U.S. Bank's motion for summary judgment should be GRANTED, but that its motion to strike should be DENIED AS MOOT.

**I. BACKGROUND**

In early March 2003, the Bryants purchased property located at 216 West Luhn Street, Bellville, Texas 77418 (the "Property"). Dkt. 18 app. at 8–12.[1] To do this, they needed to take out a mortgage, so they executed an Adjustable Rate Note (the "Note") payable to Kellner

---

[1] U.S. Bank filed an appendix to its summary judgment motion separately as docket entry 18. This appendix contains all the exhibits U.S. Bank cites in its motion. Although the appendix spans from docket entry 18 through docket entry 18-10, the pages are marked with consecutive pagination (e.g., "App. 175"). All citations to the appendix will take the form reflected in the citation corresponding to this footnote.

Mortgage Investments I, Ltd. ("Kellner"), an Adjustable Rate Rider, which seems to restate the interest-related provisions of the Note, and a first lien Deed of Trust ("Deed of Trust"), which encumbered the property (collectively, the "Loan"). *Id.* app. at 13–36. Although the exact timing is not explained in the parties' briefing, HSBC Mortgage Services, Inc. ("HSBC") began servicing the mortgage at some point. *See id.* app. at 37.

In April 2006, after the Bryants defaulted on the Loan, Wesley Bryant filed a petition ("Initial 2006 Petition") for Bankruptcy under Chapter 13 of the U.S. Bankruptcy Code. *Id.* app. at 150–53. Accompanying the Initial 2006 Petition was a bankruptcy plan ("Initial 2006 Plan"). *Id.* app. at 155–58. Before the Initial 2006 Plan could be confirmed, the Bryants filed a joint Amended Voluntary Petition ("Joint 2006 Petition") under Chapter 13. *Id.* app. at 159–62. Filed with the Joint 2006 Petition was an amended Schedule D[2] listing the amount of the mortgage principle ($66,000.00) and the amount in arrears ($4,800), and an amended bankruptcy plan ("Joint 2006 Plan"). *Id.* app. at 165, 173–80. The Joint 2006 Plan provided for 60 monthly payments to the trustee, who would then distribute the payments to the creditors. *Id.* app. at 174. The Joint 2006 Plan lists HSBC's claims for the principle ($66,000) and arrears ($4,800), and lists "0.00%" as the "Interest Rate Under Plan." *Id.* app. at 175.

The Loan is included in section 4 of the Joint 2006 Plan. *Id.* Section 4 is entitled "Secured Claim For Claim Secured Only by a Security Interest in Real Property That is the Debtor(s)' Principal Residence (Property to be Retained) or Other § 1322(b)(5) Claim." *Id.* There are two rules for this section that are relevant to the instant motion. First, the section provides that "[p]ayment of the arrearage amounts shall constitute a cure of all defaults." *Id.* Second, it explains

---

[2] A Schedule D is a list of all creditors holding secured claims. It contains fields for the creditor's name, the date the claim was incurred, and the amount of the claim, among other things.

that the secured claims in this section "will be paid in accordance with the pre-petition contract held by the holder of the secured claim." Dkt. 17 at 11; Dkt. 18 app. at 175.

HSBC sought to alter the monthly payment that the Bryants' owed to HSBC a number of times because of a change in the interest rate applicable to the mortgage pursuant to the Loan documents. Dkt. 17 at 12–13. HSBC and the trustee followed the Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments, which were adopted by the Bankruptcy Court in this district. *Id.* at 12; *see also* Hous. Div., U.S. Bankr. Ct. for the S. Dist. of Tex., Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments (adopted Sept. 29, 2005) [hereinafter Home Mortgage Payments Procedures], https://www.txs.uscourts.gov/sites/txs/files/mort_proc.pdf. The procedures require that HSBC send notice to the Bryants and the trustee that an adjustment is coming, and that the Trustee send notice to the Bryants that it plans to comply with the proposed adjustment. Home Mortgage Payments Procedures, *supra*, ¶¶ 4–8. The Bryants must then be given 20 days to seek "Court review" of the proposed adjustment. *Id.* ¶ 7.

This process was employed at least nine times[3]: October 3, 2006, Dkt. 18 app. at 185–88; April 20, 2007, *id.* app. at 196–99; September 18, 2007, *id.* app. at 201–04; April 9, 2008, *id.* app. at 206–09; October 14, 2008, *id.* app. at 211–15; April 22, 2009, *id.* app. at 217–21; October 1, 2009, *id.* app. at 240–44; November 11, 2010, *id.* app. at 248–52; and December 1, 2010, *id.* app. at 254–58.[4] In each of the notices provided by HSBC to the Bryants, HSBC clearly listed the old interest rate, the new interest rate, and the new "P&I" (principal and interest) payment. *See, e.g.*, *id.* app. at 258. Notably, the Bryants never sought review of any of the adjustments.

---

[3] For simplicity, the dates given correspond with the dates of the trustee's notices.
[4] The December 1, 2010 notice appears to detail the same change as the November 11, 2010 notice. The court is not sure why, but it makes no difference to the analysis.

After the first time the process was used, the trustee moved the court to modify the plan, a step that is only necessary in certain circumstances. *See id.* app. at 189–92; Home Mortgage Payments Procedures, *supra*, ¶ 8. In that instance, the court granted the modification. Dkt. 18 app. at 193–94. The plan was also modified once on the Byrants' motion because they had fallen into default. *Id.* app. at 222–29 (motion), 245–46 (order granting modification). In the resulting plan ("Modified Joint 2006 Plan"), the monthly payment was reduced by $50. *Id.* app. at 245–46. The Modified Joint 2006 Plan lists the principal amount of the mortgage as $66,000, and the arrears as $924.74. *Id.* app. at 232. It also lists the monthly payment due to HSBC as $706.44, the same amount listed as "new P&I payment" in the April 22, 2009 adjustment notice. *Id.* app. at 217–21.

While the bankruptcy was pending, HSBC filed an initial proof of claim and two supplemental ones. *Id.* app. at 277–305, 306–11, 312–16. The initial proof of claim ("Proof of Claim 8-1") showed a principal balance of $67,771.10 and an arrearage of $5,767.32. *Id.* app. at 277–305. The first supplemental proof of claim ("Proof of Claim 11-1") showed a principal balance of $67,771.10 and an arrearage of $6,941.71. *Id.* app. at 306–11. The second supplemental proof of claim was filed in response to the trustee's Notice of Bar Date for Asserting Claim for Post-Petition Charges Accruing on Residential Mortgage Claims and concerned an Austin County tax delinquency of $2,584.62. *Id.* app. at 312–16.

In 2011, the trustee filed a notice of plan completion and a final report and account. *Id.* app. at 265–71. Thereafter, the servicing of the Loan was transferred to Caliber, and the Note and Deed of Trust were assigned to U.S. Bank. *Id.* app. at 37–40, 53.

After the bankruptcy court dismissed a subsequent bankruptcy petition filed by Patricia Bryant in 2014, the Bryants again entered default. U.S. Bank sent letters to both Wesley and Patricia Bryant at two separate addresses, explaining that the Bryants were in default, and that

4

unless the default was cured, the loan would be accelerated. *Id.* app. at 94–118. They never cured the default.

Finally, U.S. Bank regularly sent billing statements and mortgage statements to the Bryants that detailed, among other things, the outstanding principal amount and the total amount due and owing. *Id.* app. at 119–30. There is no record that the Bryants ever disputed these statements.

When the Bryants filed their state-court petition in this matter, U.S. Bank was attempting to foreclose on the Property. Dkt. 1-4 at 3–4. After filing and before removal to this court, the Bryants obtained a temporary restraining order precluding the scheduled foreclosure sale. Dkt. 1-5. U.S. Bank has made no further attempts to foreclose.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. ANALYSIS

*A. Texas Property Code § 51.002(d) Claim*

In their petition, the Bryants allege that U.S. Bank "failed to strictly follow . . . § 51.002(d) of the Texas Property Code and the case law." Dkt. 1-4 at 3. They argue that they were not given an opportunity to cure their default before U.S. Bank accelerated the Loan and gave notice of a trustee sale. *Id.* at 3.

In its motion for summary judgment, U.S. Bank asserts that "Plaintiff's claim is meritless because . . . Caliber sent Plaintiffs letters, by certified mail . . . on or about September 30, 2015 . . . in which it advised Plaintiffs that they were in default and if they did not cure their default that the Loan would be accelerated." Dkt. 17 at 16 (citing Dkt. 18 app. at 5, ¶ 8). It claims that the Bryants never cured the default. *Id.* at 16. Moreover, it argues that it is the Bryants' burden to show that they cured the default—a burden they cannot meet. *Id.* at 16. It also asserts that there is no evidence that the Loan was accelerated before 20 or 30 days after the letters were sent. *Id.* at 16.

It appears that the Bryants agree to a certain extent. In their response, they write:

> The remedy sought was to stop the foreclosure until the Defendant complied with the Texas Property Code. This is no longer the relief sought as the Plaintiff has received notice in accordance with the Texas Property Code and now must seek the judicial interpretation of the valid amount of debt owed to the lienholder.

Dkt. 21 at 4. Thus, it appears that they have abandoned their claim under section 51.002(d) of the Texas Property Code, so summary judgment is warranted.

*B. Usury Claim*

The Bryants' petition also asserts a claim for usury. Dkt. 1-4 at 4. They claim that U.S. Bank has "attempt[ed] to collect $51,556.10 more than they are entitled to receive and that should be construed as interest as a matter of law." *Id.* They argue that section 305.001 of the Texas

6

Finance Code allows them to recover three times the difference between the amount of interest allowed by law and the total amount of interest charged. *Id.*

U.S. Bank counters with two main arguments: (1) the Loan is exempted from Texas usury laws under the Depository Institutions Deregulation and Monetary Control Act (DIDMCA or "the Act"); and (2) the interest rate was never reduced to zero—instead, interest was properly accruing throughout the bankruptcy at rates determined by the methods explained in the Loan documents.[5] Dkt. 17 at 19. Additionally, U.S. Bank contends that even if the rate had been reduced to zero during the bankruptcy, the Bryants' claim is barred by the statute of limitations, judicial estoppel, quasi-estoppel, and waiver. *Id.* at 27–33.

In response, the Bryants "admit that [their] claim, which was filed in state court, does not artfully address the issue of usury." Dkt. 21 at 4. Attempting to clarify, the Bryants write:

> The claim is that the lienholder is charging interest on a debt that is not owed due to having been discharged in bankruptcy. Even if there is a preemption of usury caps on interest rates under federal law, it does not cover claims for late fees and claims for debts not owed. If the Plaintiff is correct, the Defendant is charging interest on either $63,425.67 or $142,371.35 when the balance is less than $20,000.00. That should be a violation of truth in lending laws or consumer protection laws even if usury doesn't apply. At the very least, the Court has the ability to fashion an equitable remedy.

*Id.* To be clear, the claim pursued in the Bryants' petition is a claim for usury. Whether the Bryants now believe that U.S. Bank violated "truth in lending laws or consumer protection laws even if usury doesn't apply" is inconsequential. Those potential violations were not pled in the petition and have not been briefed by either party. Moreover, the Bryants do not even narrow down their new accusations to any specific laws or violations or provide the court with any

---

[5] The Bryants do not claim that the rates provided for by the Loan documents were usurious. They claim that their payments during the bankruptcy should have been applied entirely to the principal balance because the interest rate was reduced to zero. Therefore, they argue that it was usurious to apply what they consider principal payments to interest charges that they believe they did not, and do not, owe. *See* Dkt. 21 at 4.

7

authority to support them. Thus, the court will consider only the claim for usury, which, incidentally, is itself not thoroughly pled or briefed.

In Texas, the elements of a usury claim are: "(1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law" for the borrower's use of the money. *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994). The court does not need to engage in a full analysis of these elements, however, because Texas usury laws do not apply to the loan at issue here.

"DIDMCA preempts state interest rate ceilings on," among other things, "certain federally related loans secured by a first lien on residential real property." 47 C.J.S. *Interest & Usury* § 197, Westlaw (database updated June 2021). For a short period following the passage of DIDMCA, states had the ability to opt out of this preemption provision. To opt out, a state needed to adopt a law that explicitly stated its intent to disavow DIDMCA before April 1, 1983. *Seiter v. Veytia*, 756 S.W.2d 303, 304 (Tex. 1988) (citing 12 U.S.C. § 1735f-7). "[I]t is clear that Texas did not opt out of . . . DIDMCA. Therefore, for loans made after April 1, 1980 secured by first liens on residential real property, state usury laws do not apply, and federal law prevails." *Id.* at 305; *see also Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 996 n.1 (S.D. Tex. 2011) (Harmon, J.) (noting that DIDMCA "preempts state usury laws to the extent those laws 'expressly limit[] the rate or amount of interest that a borrower may be charged.'" (alteration in original) (quoting *Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165, 175 (2d Cir. 2006))).

Because DIDMCA preempts Texas usury laws for certain loans, the court must determine whether the loan at issue is one covered by that part of the Act. The preemption provision at issue is included below:

8

> The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, . . . shall not apply to any loan, mortgage, credit sale, or advance which is--
>
> (A) secured by a first lien on residential real property . . . ;
>
> (B) made after March 31, 1980; and
>
> (C) described in section 527(b) of the National Housing Act.

12 U.S.C. § 1735f-7a.

The record shows, and the Bryants do not dispute, that the Loan was executed on March 7, 2003, it was secured by a first lien Deed of Trust, and the Property is residential real property. Dkt. 18 app. at 2–3.

Turning to the requirement in (C), section 527(b) of the National Housing Act requires that the loan at issue be "secured by residential real property designed principally for the occupancy of from one to four families;" and be "made in whole or in part by any 'creditor,'" as defined in 15 U.S.C. § 1602, "who makes or invests in residential real estate loans aggregating more than $1,000,000 per year." National Housing Act § 527, 12 U.S.C. § 1735f-5(b)(1)(D). DIDMCA, however, exempts the loans covered under § 1735f-7a(a)—the type of loan at issue here—from the one-to-four-family-occupancy limitation, so only the second requirement is relevant. 12 U.S.C. § 1735f-7a(a)(1)(C)(i) (noting that "for the purposes of this section . . . the limitation described in section 527(b)(1) . . . shall not apply").

The lender who executed the Loan with the Bryants was Kellner. U.S. Bank has provided public loan documents that show that Kellner made more than $1,000,000 of real estate loans in both 2002 and 2003. *See* Dkt. 18 app. at 345–524. It asks the court to take judicial notice of these public records. Dkt. 17 at 18 n.6. Agreeing that it is appropriate, the court takes judicial notice of the documents. *See, e.g.*, *Tierranegra v. JPMC Specialty Mortg. LLC*, No. 7:18-CV-347, 2019

WL 92190, at *2 & n.23 (S.D. Tex. Jan. 2, 2019) (Alvarez, J.) (taking judicial notice of deed of trust pursuant to Federal Rule of Evidence 201(c)(2)).

The only question that remains is whether Kellner is a creditor as defined by 15 U.S.C. § 1602. A "creditor" is "a person who both (1) regularly extends" certain types of consumer credit; and (2) "is the person to whom the debt arising from the consumer credit transaction is initially payable." 15 U.S.C. § 1602. The record establishes that Kellner regularly extends the type of consumer credit described in § 1602 and that Kellner is the lender to whom the debt arising from the transaction was initially payable. Dkt. 18 app. at 14, 345–524.

Therefore, the undisputed summary judgment evidence establishes that Texas usury laws are preempted by DIDMCA with respect to the loan at issue. Because Texas usury laws do not apply to the Loan, the Bryants' usury claim necessarily fails. U.S. Bank has met its summary judgment burden.

Perhaps sensing that the court might reach this result, the Bryants now try to reconstrue their claim as "a violation of truth in lending laws or consumer protection laws." Dkt. 21 at 4. But there are four problems with this assertion. First, the Bryants only make a cursory nod to a vague assortment of laws. Second, they fail to provide any authority to support their claim that U.S. Bank's conduct "should be a violation" of those laws. Third, they do not explain the elements constituting a violation of those laws or show how the summary judgment evidence satisfies those elements. Fourth, they mention this collection of laws for the first time in their response to U.S. Bank's summary judgment motion. In short, they have not met their summary judgment burden and their claims must be dismissed.

## IV. CONCLUSION

U.S. Bank's motion for summary judgment is GRANTED. All of the Bryants' claims against U.S. Bank are DISMISSED WITH PREJUDICE. Consequently, U.S. Bank's motion to strike is DENIED AS MOOT.

Signed at Houston, Texas on August 6, 2021.

_____
Gray H. Miller
Senior United States District Judge